UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Jerald Meyer,

Plaintiff,

vs. ORDER

Duluth Building Trades
Welfare Fund,

Defendant. Civ. No. 00-1176 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of June, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. §636(c), upon the parties' Cross-Motions for Summary Judgment. A Hearing on the Motions was conducted on January 25, 2001, at which time, the Defendant Duluth Building Trades Welfare Fund ("Fund") appeared by John H. Bray, Esq., and the Plaintiff Jerald Meyer ("Meyer") appeared by Thomas F. Andrew, Esq. For reasons which follow, we grant the Fund's Motion for Summary Judgment.

II. Factual and Procedural Background

This is an action which arises under the Employee Retirement Income Security Act, Title 29 U.S.C. §1132(a)(1)(B)("ERISA"), which

JUN 21 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

was commenced by Meyer, who is a participant in the Fund. Meyer seeks disability and medical benefits, from the Fund, for injuries he sustained when he fell while working at his wife's place of business, on September 23, 1999. By this action, Meyer seeks to set aside the Fund's decision to deny him benefits.

The parties have filed a Stipulation of Facts for the purposes of their Cross-Motions for Summary Judgment. As stipulated by the parties, Meyer's injury occurred while he was working at Bill's Café, which was purchased by his wife in July of 1999. Meyer's wife is the sole owner of Bill's Café and, as a result, Meyer had no ownership interest, rights, or obligations towards Bill's Café.[1]

Immediately prior to Meyer's accident, Meyer's wife asked him to measure the back wall of the Café so that she could determine the price of having that wall of the Café resided. While Meyer was measuring the back wall, he fell from a scaffold and was knocked unconscious. As a result of the fall, Meyer suffered a variety of injuries, including a serious brain injury, broken ribs, a broken

[1]On September 23, 1999, when his accident occurred, Meyer was a member of Plumbers and Pipefitters Local 589 ("Local 589"), in Virginia, Minnesota. At the time, Local 589 was a participating local union, which was affiliated with the Fund. As such, Meyer was an "employee" whose employment was covered by a Collective Bargaining Agreement between a contributing employer and a participating local union.

wrist, and an injured vertebra. The parties concede that these injuries will prevent Meyer from returning to his trade as a plumber and pipefitter.[2]

After sustaining his injuries, on September 30, 1999, Meyer submitted a "Statement of Claim for Disability Benefits" to the Fund. On November 24, 1999, the Fund denied this claim, stating as follows:

> The basis for this denial can be found in your Summary Plan Description on page 41, #2(c). Based on the information received, it appears that this should have been covered under the restaurant's workmen's compensation.

Stipulation of Facts, Ex. B., at 2.

The Fund's denial of Meyer's claim for benefits was based upon the following exclusion, which is contained within the Fund's Summary Plan Description:

> **EXCLUSIONS AND LIMITATIONS**
>
> Payment will not be made under any health benefit or Weekly Income Benefit of the Plan for the following:
>
> 2. Charges incurred in connection with:
>
> * * *
>
> c. Any Accidental Injury or Sickness which would be covered under Workers' Compensation, or similar law, regardless of whether or not

[2]As a result of the accident, Meyer has incurred medical expenses which total $60,318.55 for the treatment of his injuries, and he may incur additional medical expenses in the future.

> such insurance was in force and effect at the time of injury.

Id., Ex. C., at 41.

In response to this denial, Meyer wrote to the Trustees of the Fund and advised that, at the time of his accident, he was between jobs, and had an unemployment insurance claim. Id., Ex. B., at 3. In addition, Meyer wrote:

> I do not own any part of, or have any claim in the restaurant whatsoever. So I was not working for wages, profit or gain of any kind. I was not working at all. I was getting some measurements so that my wife could get an estimate from the lumber yard on redoing the back of the building.

Id.[3]

---

[3]Meyer also sent the Trustees a copy of a letter that his wife received from a representative of her worker's compensation insurer. In this letter, the representative explained the reason for Meyer's lack of coverage under her policy, as follows:

> Under Section 176.041 of the Workers' Compensation Statutes, coverage under Workers' Compensation is excluded for a sole proprietor or the spouse, parent and child regardless of age of the sole proprietor. Coverage, however can be elected for anyone of these individuals. From the information I have and in speaking with your agent, it would appear that Jerry Meyer, who I believe is your husband, is not an employee of Bill's Café. It is also noted that you have not elected coverage for yourself under the Workers' Compensation Policy. I don't see where coverage has been elected for Jerry Meyer.
>
> As such, it would appear there would be no coverage under the Workers' Compensation Pol-

(continued...)

On February 11, 2000, Shirley Hanson, who is the Fund's Administrator, wrote the following to Meyer, in order to inform him of the Fund's reconsideration of his request for benefits:

> As stated in our letter of November 24, 1999, the claim was denied based on the information submitted regarding your injury. Please refer to page 41, #2(c) in your Summary Plan Description Booklet. Even though this was denied by the restaurant's workers' comp carrier, it appears that the main reason for denial was that you, personally, are not covered by the work comp insurance. It does appear, however, that you could have been covered if you had so elected.

Id. at 5.

Meyer has exhausted all administrative remedies, which are available to him, in administratively appealing the Fund's denial of his claim for benefits. In this action, Meyer seeks to overturn the Fund's decision to deny his benefit claim.

## III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in

---

[3](...continued)

> icy as Jerry Meyer is not an employee and even if an employee-employer relationship existed, that no coverage was elected for him under the Workers' Compensation Policy.

Stipulation of Facts, Ex. B., at 4.

rendering credibility determinations. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. Krentz v. Robertson, 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure;

see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis.

1. The Appropriate ERISA Standard of Review. Before we address the substance of the Summary Plan Description, which governs the Fund's distribution of benefits, we must determine the appropriate standard of review to govern our analysis. The parties agree that the Fund's plan is governed by ERISA. See, Title 29

U.S.C. §1001 et seq. In addition, it is well-settled that ERISA preempts State law, unless the Plan involves the purchase of an insurance policy for the provision of Plan benefits. See, FMC Corp. v. Holliday, 498 U.S. 52, 64-65 (1990)(invalidating a provision of State law which prohibited the exercise of subrogation rights); Waller v. Hormel Foods Corp., 120 F.3d 138, 139 (8th Cir. 1997)("ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan"). In the place of State law, Federal Courts are to develop a body of Federal common law, which would be applicable to ERISA actions. Pilot Life Ins. Co. v. Dedaux, 481 U.S. 41, 56 (1987)(Federal Courts may create Federal common law where ERISA is silent).

Although ERISA does not, itself, prescribe the appropriate standard of review for evaluating a benefit determination under an ERISA plan, the Supreme Court, in Firestone Tire and Rubber Co v. Bruch, 489 U.S. 101, 115 (1989), held that "a denial of benefits challenged * * * is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See also, e.g. Milone v. Exclusive Healthcare, Inc., 244 F.3d 615, 618 (8th Cir. 2001); House v. Paul Revere Life Ins. Co., 241 F.3d 1045, 1048 (8th Cir. 2001); McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1030 (8th Cir., 2000); Ravenscraft v.

Hy-Vee Employee Ben. Plan and Trust, 85 F.3d 398, 402 (8th Cir. 1996); Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Insurance Co., 48 F.3d 365, 371 (8th Cir. 1995); Bounds v. Bell Atlantic Enters, Flexibility Long Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994); Lutheran Medical Center v. Contractor's Health and Welfare Plan, 25 F.3d 616, 620 (8th Cir. 1994).

Accordingly, when the plan does not vest, in its administrators, the authority to exercise discretion, "the court undertakes a de novo review of the plan's terms and other manifestations of the parties' intent." Gruenke v. Miles, Inc., Welfare Plan, 872 F. Supp. 652, 658 (D. Minn. 1995); Whiteside v. Metropolitan Life Ins. Co., 798 F. Supp. 1380, 1385 (D. Minn. 1992). In contrast, under an abuse of discretion standard, "the plan administrator's plan construction will be upheld, if reasonable." Buttram v. Cent. States, S.E. & S.W. Areas Health and Welfare Plan, 76 F.3d 896, 901 (8th Cir. 1996); see also House v. Paul Revere Life Ins. Co., supra at 1048 ("Under the abuse-of-discretion standard, we must determine whether a reasonable person could have reached the same decision."); McGarrah v. Hartford Life Ins. Co., supra at 1031. Our Court of Appeals has "variously defined an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" Shell v. Amalgamated Cotton Garment, 43 F.3d 364, 366 (8th Cir. 1994).

In determining whether an interpretation is a reasonable exercise of discretion, the Court is to consider:

> 1. Whether the interpretation is consistent with the goals of the Plan;
>
> 2. Whether the interpretation renders any language in the Plan meaningless or internally inconsistent;
>
> 3. Whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
>
> 4. Whether the administrators have interpreted the words at issue consistently; and,
>
> 5. Whether the interpretation is contrary to the clear language of the Plan.

Finley v. Special Agents Mutual Benefit Association, Inc., 957 F.2d 617, 621 (8th Cir. 1992); see also, Wald v. Southwestern Bell Custom Care Medical Plan, 83 F.3d 1002, 1007 (8th Cir. 1996)(applying Finley factors).

As our Court of Appeals has explained, "[t]his highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of a pension plan." Maune v. IBEW, Local No. 1, Health and Welfare Plan, 83 F.3d 959, 962-63 (8th Cir. 1996), quoting, Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993).

The Fund argues that an abuse of discretion standard of review is to be applied when examining its interpretation of the Summary Plan Description which governs its distribution of benefits. In contrast, Meyer relies on Firestone Tire and Rubber Co v. Bruch,

supra at 111, and asserts that the Fund's fiduciaries are not entitled to deferential review because the Fund's Trust Agreement does not expressly provide them with interpretive authority. Meyer also argues that the Trust Agreement does not clearly and unequivocally give the fiduciaries the discretionary authority to construe doubtful terms in the Trust Agreement. As a consequence, Meyer asserts that the de novo standard of review must be applied.

In our considered view, the authority vested in the Fund's Trustees, by the Trust Agreement, is sufficiently broad to confer discretionary authority upon the Trustees. Specifically, the Trust Agreement provides as follows:

> 9.2 Determination of Trustees Binding. All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Plan or Fund or the operation thereof, whether as to any claim for any benefits preferred by any Participant or any other person, or whether as to the construction of language or meaning of the rules and regulations adopted by the Trustees or this Agreement, or as to any writing, decision, instrument or accounts in connection with the operation of the Plan or Fund or otherwise, shall be submitted to the Trustees and the decision of the Trustees shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder.

Stipulation of Facts, Ex. D., at XI-1.

This provision affords the administrators of the Fund the discretionary authority to determine eligibility for benefits and, for that purpose, to construe the terms of the Trust Agreement. Speci-

fically, because the Trust Agreement provides that "**all questions and controversies** * * * as to **any claim for benefits** * * * shall be submitted to the Trustees, and that the decision of the Trustees shall be **binding**," and since the Agreement squarely invests the Trustees with the power to construe the Agreement, and any attendant Regulations, the Fund's administrators plainly have the discretion to construe any uncertain terms, or provisions, in connection with the distribution of benefits. [Emphasis added]. Any other reading would ignore the import of the language entrusting to the administrators the authority to make "binding" determinations as to plan interpretation, and benefit distributions.

Our interpretation of this language is consisted with our Court of Appeals' decision, in Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993), where the Court considered a plan provision which was analogous to that at issue here.[4] Cox v. Mid-

---

[4]The specific language of the plan provision, which was examined in Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993), was as follows:

> §6.03. In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and **shall determine all questions** arising in the administration, interpretation and application of the Plan.

The Court, in Cox, found this provision to contain,"[p]lan language

(continued...)

America Dairymen, Inc., supra at 274; compare with, Baxter By And Through Baxter v. Lynn, 886 F.2d 182, 188 (8th Cir. 1989)(finding that a provision in the plan giving the fiduciaries the "final authority to determine all matters of eligibility for the payment of claims," did not grant the authority to construe ambiguous terms). Here, however, the Agreement contains "explicit discretion-granting language." Bounds v. Bell Atlantic Enter. F.L.T.D. Plan, supra at 339. Indeed, by our count, the Courts, which have closely considered analogous provisions, have uniformly concluded that the same, or very similar language, entrusted the plan administrators with the discretion to construe the language of the Plan, and to render decisions as to an award of benefits under the Plan's provisions. See, e.g., Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 765 (7th Cir. 1993); Bowen v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 961 F.2d 1576, 1992 WL 92832 at **3 (6th Cir., May 6, 1992)[Table Decision]; Allison v. Dugan, 951 F.2d 828, 832-33 (7th Cir. 1992); Jan Bliwas, Inc. v. Central States, 1998 WL 299468 at *5-6 (S.D. Ohio 1998); Bond v.

---

[4](...continued) [which] requires * * * a deferential abuse of discretion standard." Id., citing Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir. 1992). Moreover, the Court's most recent opinion, upon which Meyer relies, does not hold to the contrary. See, Walke v. Group Long Term Disability Ins., --- F.3d ---, 2001 WL 682731 at *3 (8th Cir., June 19, 2001).

Trustees of the STA-ILA Pension Fund, 902 F. Supp. 650, 654 (D. Md. 1995); Livingston v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 900 F. Supp. 108, 115 (E.D. Mich. 1995); Spillers v. Webb, 979 F. Supp. 494, 497 (S.D. Tex. 1997); McGinnis v. Executive Director of the Central States, 1991 WL 716749 at *3-4 (W.D. Mo., February 23, 1991). We join in that view, and conclude that the abuse of discretion standard of review should be applied in this case, to both the Fund's Plan interpretations, and its fact-based determinations.[5] Riedl v. General American Life Insurance Co., 248 F.3d 753, 756 (8th Cir. 2001).

2. The Fund's Decision to Deny Benefits. As noted, the policy exclusion, which led to the denial of Meyer's request for benefits, reads as follows:

---

[5]Meyer also argues that, because the Fund's determination was on a question of law, it is not entitled to a deferential standard of review. See, Penn v. Howe Baker Engineers, Inc., 898 F.2d 1096, 1100 (5th Cir. 1990)(Court gave no deference to administrator's conclusions as to the controlling law); Weil v. Retirement Plan Administrative Committee of the Terson Co., Inc., 913 F.2d 1045 (2nd Cir. 1990)(de novo standard of review applied to administrator's decision when decision turned on interpretation of the Internal Revenue Code). Here, the Fund's decision to deny benefits was based upon its construction of Minnesota's Workers' Compensation Act, and its finding that such coverage was available to Meyer, by his wife's election to secure that coverage, and we review that decision to determine its compliance with the applicable Minnesota Workers' Compensation laws de novo. Herrman v. E.W. Wylie Corp., 766 F. Supp. 800, 802 (D.N.D. 1991). Simply stated, in the interests of justice, we could not defer to what we would regard as an erroneous interpretation of a controlling principle of law.