**EXCLUSIONS AND LIMITATIONS**

> Payment will not be made under any health benefit or Weekly Income Benefit of the Plan for the following:
>
> 2. Charges incurred in connection with:
>
> * * *
>
> c. Any Accidental Injury or Sickness **which would be covered** under Workers' Compensation, or similar law, regardless of whether or not such insurance was in force and effect at the time of injury.

Stipulation of Facts, Ex. C., at 41.

Specifically, with respect to whether Minnesota law afforded Meyer coverage under the Workers' Compensation Act, Minnesota Statutes Section 176.041, Subdivisions 1, and 1a, provide, in pertinent part, as follows:

> Subdivision 1. Employments excluded. This chapter does not apply to any of the following:
>
> * * *
>
> (d) a sole proprietor, or the spouse, parent, and child, regardless of age, of a sole proprietor;
>
> * * *
>
> (k) a person whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession, or occupation of the employer;
>
> * * *

> Subdivision 1a. Election of coverage. The persons, partnerships, limited liability companies, and corporations described in this subdivision may elect to provide the insurance coverage required by this chapter.
>
> * * *
>
> (f) * * * The persons, partnerships, limited liability companies, and corporations described in this subdivision may also elect coverage for an employee who is a spouse, parent, or child, regardless of age, of an owner, partner, manager, or executive officer, who is eligible for coverage under this subdivision. Coverage may be elected for a spouse, parent, or child whether or not coverage is elected for the related owner, partner, manager, or executive director and whether or not the person, partnership, limited liability company, or corporation employs any other person to perform a service for hire. Any person for whom coverage is elected pursuant to this subdivision shall be included within the meaning of the term employee for the purposes of this chapter.

According to the Fund, its decision to deny Meyer's claim for benefits was based upon the language of Subdivision 1a(f), which provides that coverage may be elected for a spouse of a business owner, whether or not coverage is elected for the related owner, and whether or not the owner employs any other person to perform a service for hire. The Fund argues that, because this Subdivision would have allowed Meyer's wife to secure coverage for Meyer, as a "spouse," his injury "would be covered" under Minnesota's Workers' Compensation law, had Meyer's wife made that election.

In contrast, Meyer argues that the Fund's decision to deny his claim for benefits was unreasonable because, as the spouse of a sole proprietor, he was excluded from coverage under the plain language of Section 176.041, Subdivision 1(d). According to Meyer, under Subdivision 1a(f), his wife "could" have obtained coverage for him. Meyer argues however, that, because the Fund's exclusion language only allows for the denial of coverage when an injury "would" be covered under Workers' Compensation law, and does not provide for the denial of coverage when an injury "could" be covered under Workers' Compensation law, the Fund's decision violated the explicit language of the exclusion provision on which the Fund relies. According to Meyer, since "would" is mandatory, and "could" is permissive, Meyer's benefit claim should not have been rejected unless he was required, under Minnesota law, to secure coverage for his work at his wife's business.

As a fall-back argument, Meyer urges that his work for his wife was casual employment, which was not performed in the usual course of his wife's trade and, therefore, was excepted from coverage, under Minnesota's Workers' Compensation Act, by Minnesota Statutes Section 176.041, Subdivision 1(k), which we have quoted above. We are persuaded by neither of Meyer's arguments, and find that he would have been covered, under the Workers' Compensation

Act of Minnesota, for his work at his wife's business, had his wife elected such coverage.

First, we find no merit in Meyer's semantical argument. The Plan's exclusion plainly means that an injury, which would be covered under Workers' Compensation, if a Workers' Compensation policy were in force and effect at the time of the injury, is ineligible for benefit payments from the Fund. Undoubtedly, other words, or phrases, could have been employed to convey that same plain meaning, but our function is not to determine whether the language employed is the best, or clearest language, but whether the meaning, drawn by the Plan administrators from that language, is reasonable. See, Bremer v. Hartford Life and Accident Insur. Co., 16 F. Supp.2d 1057, 1060 (D. Minn. 1997)("[T]he court will uphold the administrator's determination if it is reasonable, regardless of whether it is the best interpretation possible.").

As the Court explained, in Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997), "[t]he Committee's decision will be deemed reasonable if 'a reasonable person **could** have reached a similar decision, given the evidence before him, not that a reasonable person **would** have reached that decision.'" [Emphasis in original]. As the foregoing quotation reflects, on occasion, the term "could" can have a different meaning than "would," but we do not see the substitution of "could," for "would," which Meyer

accuses the Fund of doing by its construction, to have substantive import, even if it occurred. Given the context, "could" and "would" may be used interchangeably. For example, we can find no meaningful distinction between saying that "the jar **could** hold eight ounces of fluid," or saying that "the jar **would** hold eight ounces of fluid." The interpretation of the Plan exclusion, while, perhaps, not the only reasonable construction, remains a reasonable one, here, given the Record presented.

As we have previously noted, "[i]n determining whether a committee's interpretation of a plan is reasonable, this circuit utilizes the five-factor test outlined in Finley v. Special Agents Mut. Benefit Ass'n * * *." Cash v. Wal-Mart Group Health Plan, supra at 641. Plainly, the Fund's interpretation is consistent with the goals of the Plan, as the Fund has a finite set of financial resources to be used for the collective good of its members, and allowing Plan assets to be depleted, in order to pay benefits which would have been payable from an unrelated source of funds, would not advance that aspiration of the Plan.[6] On the other hand,

---

[6]Under ERISA, a plan administrator must discharge its fiduciary "duties with respect to a plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries." Title 29 U.S.C. §1104(a)(1). As our Court of Appeals has clarified, "[f]iduciary obligations extend primarily to the plan as it relates to all beneficiaries, not just to individual claimants." Barnhart
(continued...)

if benefits were not available from a commonly available collateral source -- in this instance, a Workers' Compensation insurer -- then the assets of the Plan would be available to compensate the injured Plan participant.

We are not aware of any Plan language that would be rendered meaningless, or internally inconsistent by the Fund's interpretation, nor are we aware of any provisions of ERISA which would be contravened by the Fund's construction of the exclusion in dispute.

---

[6](...continued)
v. UNUM Life Ins. Co., 179 F.3d 583, 589 (8th Cir. 1999), citing Massachusetts Mutual Life Ins. v. Russell, 473 U.S. 134, 142 (1985), for the proposition "that the fiduciary duty of ERISA provisions are primarily concerned with protecting the integrity of the plan, which in turn protects **all** beneficiaries." [Emphasis in original]. Obviously, there are unavoidable tensions in addressing the needs of the Plan, and individual claimants. In the words of the Third Circuit:

> In Adams v. New Jersey Brewery Employees' Pension Trust Fund, 670 F.2d 387 (3d Cir. 1982), we recognized the sometimes conflicting obligations of the trustees to preserve the financial security of a pension fund and yet apply the assets to the greatest possible advantage for the beneficiaries. At times, restricting the amounts paid to some may be necessary to prevent loss to others. Partly because of these competing interests, trustees are given broad discretion to act, and we reverse their actions only if they are arbitrary and capricious.

Geib v. New York State Teamsters Conference Pension and Retirement Fund, 758 F.2d 973, 978 (3rd Cir. 1985).

We find nothing unreasonable in the Fund's effort to conserve its assets as contemplated by the exclusion that is here at issue.

In our considered view, the Fund's interpretation does not conflict with the clear language of the Plan, nor are we advised that the interpretation is contrary to the Fund's prior construction of the same, or similar, terminology. Of course, in conducting this evaluation, we do not substitute our own weighing of the evidence for that of the Plan administrators, nor do we reject an interpretation merely because we do not agree with the result that such a construction prompts. See, Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029 (8th Cir. 1993); Cox v. Mid-America Dairy-men, Inc., 965 F.2d 569, 572 (8th Cir. 1992). Notably, Meyer does not demonstrate that the Fund's interpretation is unreasonable, or not supported by the substantial evidence of Record when considered as a whole, but merely contends that the Fund's construction is wrong. For the reasons stated, we disagree.

The issue devolves, therefore, to a determination of whether Meyer would have been covered by Workers' Compensation, had a policy been obtained on his behalf. To answer this question, we turn to the laws of Minnesota and, specifically, the provisions of Minnesota Statutes Section 176.041, Subdivision 1a(f), which allow the owner of a business -- here Meyer's wife -- to elect coverage, under Minnesota's Workers' Compensation Act, for Meyer. According to the stipulated Record before us, Meyer's wife made no such election.

We understand Meyer to argue that, notwithstanding his wife's election to forego Workers' Compensation coverage for his benefit, such an election would have provided him with no protection, as he was a "person whose employment at the time of the injury [was] casual and not in the usual course of the trade, business, profession, or occupation of the employer" and that, therefore, he would have remained excluded from the coverage of Minnesota's Workers Compensation Act by virtue of Minnesota Statutes Section 176.041, Subdivision 1(k). While the issue is not free from doubt, and has not been fully illuminated by the Minnesota Courts, we find Meyer's argument to be unconvincing. We accept, as Meyer urges, and as Section 176.041 makes plain, that various workers are excluded from the coverage of Minnesota's Workers' Compensation Act, including spouses of business owners, and persons engaged in casual employment, whose work, at the time of their injury, was not in the usual course of the trade, business, profession, or occupation, of the employer.

We are also mindful of Meyer's effort, and it is a considerable one, to qualify Meyer, at the time of his injury, as such a casual employee. Nevertheless, we find the argument precluded by the provisions of Subdivision 1a(f). While not a paradigm of clarity, on this Record, we construe that Subdivision as extending Workers Compensation coverage to the spouses of business owners,

nothwithstanding that they may be engaged, at the time of their injury, in casual employment which is not in the usual course of the business of the employer. In part, Subdivision 1a(f) provides as follows:

> The persons, partnerships, limited liability companies, and corporations described in this subdivision may also elect coverage for an employee who is a spouse, parent, or child, regardless of age, of an owner, partner, manager, or executive officer, who is eligible for coverage under this subdivision.

A plain reading of this provision would imply that, to be covered as a spouse of a business owner, the worker must otherwise be eligible for coverage under the Workers' Compensation Act. If the Subdivision ended at this point, we would agree with Meyer, that electing coverage would provide no protection, under the Act, to those spouses who were not otherwise eligible for Workers' Compensation coverage -- say, for example -- because that spouse was excluded from coverage as a "casual employee."

Subdivision 1a(f) continues, however, to provide as follows:

> Coverage may be elected for a spouse, parent, or child whether or not coverage is elected for the related owner, partner, manager, or executive director and whether or not the person, partnership, limited liability company, or corporation employs any other person to perform a service for hire. **Any person for whom coverage is elected pursuant to this sub-**

> **division shall be included within the meaning of the term employee for the purposes of this chapter.**

[Emphasis added].

Upon a facial reading, there appears to be an internal conflict, within Subdivision 1a, for the latter provision, which we have just quoted, extends the status of an "employee," under the Workers' Compensation Act, to "any person" for whom coverage is elected under Subdivision 1a(f) -- inclusive of a spouse of an owner, or an "independent contractor" -- that is, persons who, under Subdivision 1, would not otherwise be eligible for coverage under the Subdivision, absent the election allowed by Subdivision 1a(f).

In concluding that the extension of "employee" status, within the Minnesota Workers' Compensation Act, to spouses of owners who have elected to obtain Workers Compensation insurance, trumps any requirement that the "employee" be otherwise eligible for coverage, we construe the ostensibly conflicting provisions to allow each to have force and effect. We construe the phrase "who is eligible for coverage under this subdivision," to have specific reference to Subdivision 1a. Accordingly, if a person is eligible for coverage under Subdivision 1a -- for example, the person engages in work for a spouse who owns the business -- then the owner's election of coverage for that spouse envelopes him or her within the meaning of

an "employee," without reference to the type of work in which the worker-spouse is engaged at the time of his or her injury.

As the Court observed, in Hallas v. Naegele Outdoor Advertising, Inc., 541 N.W.2d 594, 597 (Minn.App. 1995), rev. denied (Minn., February 9, 1995), "the purpose of the election provision [i.e., Minnesota Statutes Section 176.041, Subdivision 1a(f)] is to allow more workers to be brought within the scope of the Act." We find nothing substantively different from allowing a business owner to elect coverage for independent contractors, who are clearly not "employees," and allowing the same business owner to secure Workers' Compensation coverage for his or her spouse who works, for whatever reason, in the owner's business.

Moreover, our construction effectuates the presumption that, in ascertaining legislative intent, we allow the entire content of Subdivision 1a(f) to be "effective and certain." Minnesota Statutes Section 645.17(2). We also give effect to the presumption that the Minnesota Legislature did not "intend a result that is absurd, impossible of execution or unreasonable," Minnesota Statutes Section 645.17(1), for it would make no sense to extend coverage to a worker-spouse, as an "employee" under the Workers' Compensation Act, only to sculpt out the Act's protection on the basis that the owner-spouse asked the worker-spouse to do a casual, and out-of-the usual-course-of-business, work task. Lastly, our inter-

pretation of Subdivision 1a finds some independent corroboration in Record, as the Workers' Compensation insurer of the business that Meyer's wife owned, denied coverage because, on the information the insurer possessed, Meyer's wife had not elected coverage for him, and Meyer was not an "employee of Bill's Café." As we read the applicable law, both disqualifying factors would be rectified by an election under Subdivision 1a, for electing coverage for Meyer would have qualified him as an "employee" under the Act.[7]

---

[7]Were we to interpret Subdivision 1a differently, we would be caused to deny Summary Judgment to either party, as the evidence before us, which relates to Meyer's past involvement in other work duties at his wife's business, is scant. By way of examples, we have no information as to: (1) whether Meyer routinely performed such services for his wife; (2) whether measuring the side of the restaurant was part of an overall effort to prepare the business for operation, or was part of the routine maintenance of the business; (3) whether Meyer was expected to perform other tasks in order to render the restaurant more attractive; (4) the importance of Meyer's employment, or (5) the duration of Meyer's employment.

Whether particular work is either casual, and/or within the usual scope of the business, are highly fact-dependent. Of the two qualifications, the latter is the more determinative as, on some occasions, the painting of trim, on an apartment building, has been found to be within the course of the business of renting such a building to a lessee, because the appearance of the building could enhance its attractiveness for renting purposes. See, Berard v. LaCoe, 286 Minn. 375, 176 N.W.2d 74 (1970)(finding an apparent casual employee to be covered under the Workers' Compensation Act). On this Record, we could not hazard a guess whether, in the context of a restaurant, work incident to rendering the exterior of the business more appealing to the consuming public would necessarily fall within the usual course of that restaurant's business, as was the case in Berard. To render that determination, further facts would be required for an informed judgment.

We do not overlook the unfortunate consequence that arises from the election not to include Meyer under the umbrella of the Minnesota Workers' Compensation law. Seldom are these types of ERISA claims removed from the hard realities of life, including the truth that an election, once perceived to be trivial, can ultimately have tragic repercussions. This would appear to be such a case. We are not empowered, however, to substitute our inclinations, as to how such misfortune can be cured, when the facts, and the governing law, constrain our free hand. Here, we conclude that the Fund exercised a reasonable judgment in declining Meyer's application for benefits, "and that decision 'should not be disturbed even if another reasonable, but different, interpretation may be made.'" Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, ---- (8th Cir. 2001)[no page references available], quoting Donaho v FMC Corp., supra at 899, quoting in turn, Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 279 (7th Cir. 1994).

In sum, finding that the Fund is entitled to Judgment as a matter of law, we grant the Fund's Motion for Summary Judgment, and we deny Meyer's Cross-Motion for Summary Judgment.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff Jerald Meyer's Motion for Summary Judgment [Docket No. 10] is DENIED.

2. That the Defendant Duluth Building Trades Welfare Fund's Motion for Summary Judgment [Docket No. 12] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE