UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Jerald Meyer,

Plaintiff,

vs. ORDER

Duluth Building Trades
Welfare Fund,

Defendant. Civ. No. 00-1176 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 28th day of February, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Plaintiff's Petition for Attorney's Fees, and upon his Motion for Entry of Judgment.

For these purposes, the Plaintiff Jerald Meyer ("Meyer") has appeared by Thomas F. Andrew, Esq., and the Defendant Duluth Building Trades Welfare Fund ("Fund") has appeared by John H. Bray, Esq. The parties have submitted their positions on their papers, and have waived oral argument.[1] For reasons which follow, we grant

[1]We do note that the Plaintiff has filed a Reply Memorandum in support of both his Petition for Attorneys' Fees, and his Motion for Entry of Judgment. Although we are uncertain of the propriety (continued...)

FEB 28 2003

37

both the Plaintiff's Petition for Attorneys' Fees, and his Motion for Entry of Judgment.

## II. Factual and Procedural History

On September 23, 1999, while assisting his wife with some work at her restaurant, the Plaintiff fell and sustained a serious injury, which left him disabled. Following that injury, the Plaintiff, who was a member of a union which participated in the Fund, submitted a claim to the Fund -- whose provisions are governed by the Employee Retiree Income Security Act of 1974 ("ERISA") -- requesting that the Fund cover those medical bills, and provide him with a weekly income benefit. The Fund denied his claim on the ground that the Plaintiff's injuries would be covered by the workers' compensation plan of his wife's restaurant, and the Plan, which governed the Fund excluded payments to persons who were covered, or who could be covered, under such a plan. The Plaintiff then contacted his wife's insurer, who informed him that, under State law, the spouse of a sole proprietor is excluded from coverage under the Minnesota Worker's Compensation Act ("MWCA"), unless such coverage had been elected, which it had not been, in his case.

---

(...continued)
of this submission, at least as it concerns the Petition for Attorney's Fees, see, D. Minn. L.R. 7.1, in the interest of being fully informed, and in the absence of any objection by the Defendant, we have considered that submission in our consideration of the merits of the Plaintiff's Motions.

When the Plaintiff informed the Fund that he was not covered by any workers' compensation plan, the Fund again denied his claim, reasoning that, while he was not covered, he could have been, had he so elected, and consequently, he was still excluded from receiving benefits from the Fund.

After fully exhausting the relevant administrative requirements, the Plaintiff brought this action. Upon the parties' cross-Motions for Summary Judgment, by Order dated June 21, 2001, we granted the Fund's Motion for Summary Judgment. The Plaintiff took an appeal to the United States Court of Appeals for the Eighth Circuit, see, Title 28 U.S.C. §636(c), which held, by Order dated August 5, 2002, that as a matter of law, the Plaintiff was ineligible for workers' compensation benefits, under the MWCA, and reversed and remanded the case "for further proceedings consistent with [that] opinion." Meyers v. Duluth Building Trades Welfare Fund, 299 F.3d 686, 692 (8th Cir. 2002). In remanding the case, the Court also directed that we should "exercise [our] discretion regarding the issue of attorneys' fees in accordance with applicable law." Id. Thereafter, the Plaintiff filed his Petition for Attorneys' Fees, and his Motion for Entry of Judgment.

III. Discussion

A. The Plaintiff's Petition for Attorneys' Fees.

The Plaintiff has brought a Petition for an award of attorneys' fees, arguing that we should exercise our discretion, under ERISA's fee-shifting provisions, and award him his fees. See, Title 29 U.S.C. §1132(g)(1). The Fund objects to such an award, on two grounds. First, the Fund contends that the Plaintiff has failed to establish that he had any agreement to pay his attorney and, second, it argues that, even if the Plaintiff did have such an agreement, under the relevant law, the Plaintiff is not entitled to an award of fees. We address each of the arguments, in turn.

1. The Plaintiff's Fee Agreement. According to the Fund, the Plaintiff has failed to establish a specific agreement with his attorney concerning fees and costs, and that this failure precludes an award of attorneys' fees. In support of his Petition for fees, the Plaintiff has submitted an Affidavit, from his attorney, which states, in relevant part, as follows:

> I am the attorney of record in the above entitled case. Plaintiff Jerald Meyer pursuant to an oral agreement agreed to hire the law firm of Brown, Andrew & Signorelli, P.A. to prosecute his claim for benefits under ERISA, and agreed to pay Brown, Andrew & Signorelli attorney's fees with services to be billed at the usual hour[ly] rate of each attorney or paralegal that performed work on the case.

> Jerald Meyer also agreed to pay for costs and disbursements associated with the prosecution of the case.

Affidavit of Thomas F. Andrew ("Andrew Affidavit"), at 1.

The Fund complains that this Affidavit fails to identify what hourly rate the Plaintiff was to pay, and that, because the agreement was oral, there is no way to ascertain what the agreement contained. According to the Fund, since the Plaintiff has not proved that there was "any cognizable arrangement between he and his attorneys to pay attorneys' fees," the Court should deny his Petition. Defendant's Memorandum in Opposition to Petition for Attorneys' Fees, at 3-4.

It should not be surprising, given the Fund's failure to cite any legal authority in support of its argument, that we, too, have found nothing, in the law or in logic, to sustain the Fund's argument. The evidence submitted by the Plaintiff shows that there was an agreement, between the Plaintiff and his attorney, and that the Plaintiff would pay his attorney, for services rendered in this action, at the going rate then being charged by the law firm he retained. See, Andrew Affidavit, at 1. While the agreement does not specify an hourly rate, in numeric terms, it does provide the basis upon which the fee could be calculated. We note that Rule 1.5(b), Rules of Professional Conduct, provides that, "[w]hen the lawyer has not regularly represented the client, the basis or rate

of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

Under this standard, there is a clear preference for a written fee agreement, but a writing is not required, and an attorney may communicate his or her hourly fee to the client -- either in writing or orally -- either as a flat rate, or in terms that will disclose the basis by which fees will be calculated. See, <u>Curtis v. City of Des Moines</u>, 995 F.2d 123, 126 (8th Cir. 1993)(client was represented by an attorney under an oral fee agreement). Here, the Plaintiff entered a permissible oral agreement with his counsel which identified the basis that would be employed to calculate the attorney's hourly fees, and we find that such an agreement is suitable, and acceptable. Accordingly, we proceed to the substance of the Plaintiff's fee request.

2. <u>The Plaintiff's Fee Petition</u>. The Plaintiff requests that we order the Fund to pay attorney fees in the amount of $25,100.50. In response, the Fund contends that, under the relevant standard, the Plaintiff is not entitled to such an award.

a. <u>Standard of Review</u>. ERISA's fee-shifting provisions are discretionary, not mandatory, and allow the reviewing Court to exercise its discretion in granting, or denying, an award

of attorney fees to a prevailing party. Title 29 U.S.C. §1132(g).[2] Our Court of Appeals has employed a five-factor test to assist Courts in exercising their discretionary determination of a fee award. Those factors include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all partici-

---

[2]Until recently, a presumption in favor of awarding fees to the prevailing party was applied in this Circuit. See, Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir. 1980) (holding that the prevailing party is entitled to a presumption in favor of a fee, which can be rebutted by a showing of special circumstances in support of its denial). However, in Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002)[en banc], cert. denied, --- U.S. ---, 123 S.Ct. 967 (2003), the Court of Appeals overruled that presumption, and joined the seven other Circuits which had previously come to the same conclusion.

In so holding, the Court reasoned that, even though "Congress did provide for fee shifting at the district court's discretion in ERISA cases, the operation of a presumption in favor of fees undermine[d] the 'American Rule' and should be employed only in extraordinary cases, such as civil rights litigation." Id. at 971. As a consequence, no presumption of an award of fees is here applied, and we consider the Plaintiff's request under the five-factor test enunciated in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984). We are mindful, however, of the Court's admonition, in Martin, that "few, if any fee awards have been denied a prevailing plaintiff in ERISA cases nationwide," "even though nine of the circuit courts do not employ any kind of presumption in favor of fees," and "[t]hus, the absence of a presumption has obviously not doomed ERISA plaintiff's attorney fee requests, and will not do so in this Court." Id. at 972.

> pants and beneficiaries of an ERISA plan or to resolve a significant legal qeustion [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984), citing Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).

These five factors "are by no means exclusive or to be mechanically applied," and we "are not obligated to regurgitate, rote, the Westerhaus factors." Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002)[en banc], cert. denied, --- U.S. ---, 123 S.Ct. 967 (2002). Instead, Courts should consider the factors to be "well-recognized **general guidelines** which provide direction to the district court while also facilitating 'meaningful appellate review.'" Id. [emphasis in original], quoting Eddy v. Colonial Life Ins. Co. of Am., 59 F.3d 201, 205-06 (D.C. Cir. 1995).

b. Legal Analysis. We turn, then, to a consideration of the Plaintiff's fee request, in light of the Westerhaus factors.

1) The Defendant's Bad Faith or Culpability.

The Plaintiff maintains that this factor weighs heavily in its favor, citing the Court of Appeals' conclusion that "the Fund's interpretation of the plan constitute[d] an 'abuse of discretion.'" Meyer v. Duluth Building Trades Welfare, supra at 689 n. 2. The Fund disagrees, and urges that its denial

of benefits was not in bad faith, but rather, was based on a legitimate -- albeit incorrect -- interpretation of the relevant law, in an area where the specific issue had not been previously addressed in a reported ERISA case. The Fund also maintains that its denial of the Plaintiff's claim was consistent with its own past practices, and notes that it promoted a speedy resolution to the action by stipulating to a factual record, and by agreeing to a disposition by cross-Motions. The Plaintiff does not deny that the Defendant did these things to facilitate a speedy adjudication, but counters that the Fund has still failed to work towards a prompt payment of his claims, as it has not yet agreed to pay the Plaintiff's benefits, even after the Court of Appeals issued its adverse determination.

We note that, on the one hand, "[i]f the [five] factors are to have any force and effect, a plan cannot presumptively be charged with attorney fees every time it is reversed in its decision to deny benefits" while, "[o]n the other hand, encouraging a plan to act expeditiously and appropriately once benefits have been ordered will ultimately best promote the 'interests of participants in employee benefit plans and their beneficiaries.'" Martin v. Arkansas Blue Cross and Blue Shield, supra at 973, quoting Title 29 U.S.C. §1001(b). Under this standard, we find that the first factor weighs somewhat in the Plaintiff's favor.

We attribute no error to the Fund's initial denial of the Plaintiff's claim, or to it its behavior during the course of the subsequent litigation, as we find that the Fund asserted its arguments, in good faith, and frankly, we were persuaded by the Fund's interpretation of the law. Nor do we conclude that the Court of Appeal's finding, that the Defendant's denial of his claim was an abuse of discretion, intimated a sinister intent, on the Fund's behalf, which amounts to a showing of bad faith. We do, however, have grave concern over the Fund's apparent failure to pay benefits to the Plaintiff. Although the Fund argues, that the issue of what benefits the Plaintiff is entitled to receive has not been adjudicated, we find no cause for the Fund's delay in paying that portion of the benefits to which the Fund acknowledges are due to the Plaintiff.

Accordingly, we conclude that an award of fees would "encourag[e the Fund] to act expeditiously and appropriately once benefits have been ordered" and, in so doing, "ultimately best promote the 'interests of participants in employee benefit plans and their beneficiaries,'" and we find that this factor counsels an award of attorney fees. Martin v. Arkansas Blue Cross and Blue Shield, supra at 973, quoting Title 29 U.S.C. §1001(b).

2) <u>The Ability of the Defendant to Satisfy an Award of Attorneys' Fees</u>.

The Court of Appeals has instructed that, when considering this factor, we are to "keep in mind fundamental differences in plan funding mechanisms," because "[o]rdering large fee payments from an employee-funded plan might actually hurt the plan participants by increasing costs, contrary to the stated purpose of ERISA." <u>Martin v. Arkansas Blue Cross and Blue Shield</u>, supra 972. The Plaintiff recognizes that the Fund is partially participant funded, but he contends that the fee that he seeks would neither jeopardize the Fund, nor its participants. According to the Plaintiff, the relation of the fee to the benefits obtained is modest, and simply reflects the amount that the Plaintiff was required to expend in order to secure the benefits to which he was entitled.

The Fund, however, argues that it is not financially sound, and that an award of fees will harm its participants by diminishing the Fund's ability to pay future claims. In support of this argument, the Fund has submitted the Affidavit of Shirley Hanson ("Hanson"), who is the third-party administrator of the Fund. In her Affidavit, Hanson avers that, while welfare funds generally have twelve to eighteen months of reserves from which to pay claims, the Fund has only four months in reserve, due in large part to poor