performance of the Fund's investments. Thus, Hanson has attested that an award of fees to the Plaintiff will "cause a decrease in the Fund's liquid cash available to pay claims of participants at present." Affidavit of Shirley Hanson, at ¶4.

We are not persuaded by the Fund's representations. To be sure, every payment of a claim, or fee, will necessarily "cause a decrease" in the Fund's cash reserves but, absent some showing that such a payment would have some real, adverse impact on the Fund's ability to continue to offer services to its participants, we are unable to conclude that the mere decrease in the Fund's reserves should warrant a denial of benefits, or fees, to the Plaintiff. Further, we note that, as of April 30, 2002, the Fund had net assets of over five million dollars. The Plaintiff's request of an award of $25,100.50, which represents the fees that the Plaintiff was forced to incur in order to obtain the benefits to which he was entitled, represents an insignificant fraction of the Fund's overall assets. We are mindful that the Fund is partially participant-funded, but the Fund has made no competent showing that the payment of the fees, which are sought by the Plaintiff, would cause increased costs to the participants, or would otherwise harm them. Importantly, the Plaintiff is entitled to the same benefits which are distributed to other participants of the Fund, and the Fund has made no cogent showing that other participants have had to forego

the receipt of benefits owing to the Fund's financial condition. Therefore, we find that this factor weighs in favor of granting the Plaintiff the award that he seeks.

3) <u>Whether an Award of Attorneys' Fees Would be a Deterrent</u>.

The Plaintiff suggests that an award of fees would deter the Fund, and other, similar funds, from employing an overly-broad reading of the provisions of the MWCA. According to the Plaintiff, most, if not all, ERISA plans provide that workers' compensation plans are to be primarily liable for any covered on-the-job injuries, and that ERISA plans are only liable if those workers' compensation plans do not cover a claim. Thus, the Plaintiff maintains that an award of fees, here, would forewarn ERISA administrators that they must carefully, and narrowly, construe the MWCA when they may appear to be applicable. The Fund disagrees, saying that the factual circumstances of this case were unique, and maintains that the resolution of the Plaintiff's claim depended on an interpretation of the MWCA, and not of ERISA, and that the result reached here, would do little, if anything, to deter future acts by ERISA administrators nationwide.

We conclude that this factor is neutral, neither favoring or disfavoring either party. The decision of the Court of Appeals will have an effect on ERISA plans involving Minnesota partici-

pants, and the impact that the MWCA may have upon an award of benefits. However, we consider this impact on the beneficial effect that the Court of Appeals' decision will have, generally, in any similar claims filed in the future -- that is, in our assessment of the fourth Westerhaus factor. More importantly, in the absence of a showing of bad faith, we are uncertain as to what decisions the ultimate ruling of the Courts should deter. An ERISA administrator is charged with a fiduciary duty to only award benefits are required by the law, so as to conserve the funds of the participants for the purposes for which the Fund was created. Here, we have found no bad faith, merely an erroneous judgment as to the application of law to stipulated facts. We have no reason to believe, and the Plaintiff offers no showing, that the Plaintiff's denial of benefits was due to indifference, a faulty claims procedure, bias, or the like. Accordingly, we find this factor to be neutral -- neither commending, nor assailing, an award of fees.

4) Whether the Action Sought to Benefit all Plan Participants or to Resolve a Significant Legal Question Concerning ERISA.

The Plaintiff argues that his action benefited all of the participants and beneficiaries of the Fund, and other similarly situated funds, because the Court of Appeals' ruling will lend certainty to a question that was previously uncertain. The Fund counters that the Plaintiff's challenge in-

volved only the denial of his benefits, and had no impact on any of the other participants. The Fund claims that there is no class of similarly situated persons, who will benefit from the result obtained by the Plaintiff. In addition, the Fund reiterates that the result was dependent on the application of MWCA, and not on the application of ERISA principles, and therefore, that no significant legal question, under ERISA, was resolved.

The Fund's argument has no merit. While the Plaintiff's claim was generated by his own self-interest, that does not suggest that he had not "acted to protect the interests of other insureds under the policy." Pearch v. Paul Revere Life Ins. Co., 2002 WL 1976014 (D. Minn., August 23, 2002). The resolution of the Plaintiff's claim assures that persons who are similarly situated will not have to engage in the same efforts to secure an award of benefits. Surely there will be factual distinctions which may, or may not, make a difference, but the Court of Appeals plainly resolved a question which intersects ERISA, and the MWCA, which, the Plaintiff asserts, has been recurrent. While we have no means of actually measuring the degree of recurrence, we are satisfied, given the broad extent to which working spouses, some owning their own businesses, are insured, or uninsured, for workers' compensation purposes, that the issue resolved by the Court of Appeals is not as

esoterically unique as the Fund portends. Accordingly, we find this factor to favor an award of fees.

5) The Relative Merits of the Parties' Positions.

The Plaintiff asserts, and we agree, that this factor weighs in favor of an award of attorneys' fees. Although we have already found that the Fund's arguments in favor of its denial of the Plaintiff's claim for benefits were not acts of bad faith, and while we shared the Fund's interpretation of the MWCA, the Court of Appeals resoundingly rejected our reasoning, being convinced that the Plaintiff had the sounder position. As the merits clearly rested with the Plaintiff, we find this factor to endorse an award of fees.

Lastly, one additional factor commends an award of attorney fees. The benefits which the Fund will pay to the Plaintiff are primarily designated to pay the Plaintiff's medical bills, and will be remitted to the Plaintiff's service providers. The Plaintiff will receive, personally, only $4,225.00, which equals thirteen payments of a $325.00 in weekly disability income benefits. As a result, the Plaintiff, who is now disabled and unable to work, will not receive a bounty of funds with which he can pay his attorney for the success he obtained as the prevailing party. He will receive no windfall by an award of the fees, and it should be

without dispute that Plaintiff's counsel properly deserves the credit for the Plaintiff's success -- a credit commensurate with an award of fees. Therefore, finding an award of fees to be warranted, by application of the Westerhaus factors, we proceed to determine the reasonable amount of that award.

In considering the amount of attorney's fees in ERISA cases, Courts are to use the "lodestar" technique, which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001). In addition, the Court may consider the amount of the recovery, and the results obtained by the lawsuit. See, Griffin v Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999). In determining whether a fee is reasonable, our Circuit has adopted the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1984), which we consider, but need not exhaustively address. Id. Those factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Johnson v. Georgia Highway Express, Inc., supra at 717-19.

We find the hours expended by Plaintiff's counsel to be reasonable. The case involved a novel issue of statutory construction, which was neither simple, nor straightforward, and which was not illuminated by an abundance of decisional law. Nonetheless, to be assured that there were no prior decisions, which would provide precedential or providential guidance, the research of Plaintiff's counsel had to be exhaustive. Counsel for the Plaintiff was not merely required to navigate through the administrative procedures, but had to research and present the Plaintiff's claims both in this Court, and in the Court of Appeals. We are persuaded, based on the Affidavits submitted, as well as on our own understanding of hourly rates charged by attorneys in this community, that the hourly rate charged by the Plaintiff's attorneys is also reasonable.[3] Accordingly, fees in the amount of $25,100.50 will be awarded as entirely reasonable.[4]

---

[3]The Fund does not contest the hourly rates billed by counsel for the Plaintiff nor, in our view, is there reason to do so.

[4]In reaching this conclusion, we have considered the issue of whether the Plaintiff is entitled to recover attorney fees that (continued...)

B. Motion for Entry of Judgment.

The Plaintiff has also moved the Court to enter formal Judgment in his favor, which would direct the Defendant to pay him $4,225.00 in weekly income benefits plus interest, to pay the Plaintiff's medical bills, and to pay the Plaintiff's attorneys' fees, plus costs, and disbursements.

As we have already determined that the Plaintiff is entitled to an award of attorneys' fees, we will, of course, enter Judgment to that effect. As to the Plaintiff's requests for his costs and disbursements, we agree that the Plaintiff is entitled to this award as well, but the Plaintiff has not provided us with an accounting of the those costs. Accordingly, in order that we can assess an award of costs and disbursements, we direct counsel to immediately "meet and confer" so as to resolve the amount of costs,

(...continued)
were incurred for work performed during the administrative process, and prior to his initiation of this action. This same issue was recently considered by our District Court, the Honorable John R. Tunheim, presiding, in Parke v. First Reliance Standard Life Ins. Co., 2002 WL 31163129 (D. Minn., September 25, 2002). There, the Court concluded, after a review of relevant legal precedent, that "[t]he fact that the fees * * * were incurred prior to the start of judicial proceedings does not diminish their importance to the ultimate outcome." While we will not recite the underlying reasons for our concurrence with that decision, since the Fund has not challenged the inclusion of those fees, we merely hold that the Plaintiff is entitled to an award of the fees attributable to the administrative process, as well as those incurred after the commencement of his action.

and disbursements, that are owing, and recoverable, and if there remains any dispute, then the parties are to submit simultaneous briefs on the dispute, not to exceed ten (10) pages, five (5) days after the impasse, if any, is reached.

The Fund also contends that "Judgment may not be entered in the manner requested * * * for the simple reason that not all of the medical charges he demands [to] be paid are necessarily covered by the Fund's plan documents, and the stipulated record is essentially silent in that respect." Defendant's Memorandum in Opposiion to Petition for Attorneys' Fees. In support of that contention, the Defendant has offered the Affidavit of Hanson, in which she avers as follows:

> 5. That [Hanson is] in the process of reviewing the claims submitted by [the Plaintiff]'s medical providers, and will pay those actually covered by the plan documents. Not all of his medical claims are covered by the plan.
>
> 6. That [the Plaintiff] ceased to be a participant in the Fund as of June [of] 2000. He paid his last two (2) months of self-payments (because he was not working at the time, and therefore had no employer to make contributions on his behalf) in the form of checks drawn on a Bill's Restaurant's account, but stopped making these self-payments after one of these checks was dishonored by his bank. Because [the Plaintiff] ceased to be a participant as of June of 2000, he is not entitled to the payment of disability benefits or coverage of his medical bills incurred after that time.

The Plaintiff responds that neither contentions has merit. First, as to the issue of his claimed weekly income benefit payments, the Plaintiff notes that the only argument, that the Defendant advances against their payment, is that he ceased to be a participant in the Fund as of June of 2000. However, according to the Plaintiff, the parties stipulated to the fact that the Plaintiff "has been totally disabled and unable to work since his injury on September 23, 1999," and that, under the express terms governing the Fund, the weekly "[b]enefits will begin on the first day of disability due to an Accidental Injury." See, Exhibit C attached to Stipulation of Facts, at 5, 23. As a result, the Plaintiff argues that his weekly benefits should have started on September 23, 1999, the acknowledged first day of his disability, and then run for the following thirteen weeks. Accordingly, this period would have expired in January of 2000, well before he ceased his participation in the Fund.

The Fund has not presented us with any evidence which controverts this aspect of the Plaintiff's claim, and we find it plain, under the express terms of the Fund's Summary Plan Description, as well as under the parties' stipulated facts, that the Plaintiff is entitled to the disability income benefits. In addition, we find that the Plaintiff is entitled to the payment of interest on those benefits from the date of the Defendant's initial denial of his

claim, to the date of payment. Again, we direct counsel to "meet and confer" on the amount of interest owing, and to employ the same briefing schedule, that we have already detailed, in addressing any impasse that may be reached.

As to the Plaintiff's medical expenses, the Plaintiff notes that the Fund has claimed that it has not payed his medical bills because "not all of the medical charges he demands [to] be paid are necessarily covered by the Fund's plan documents," and that the only reason the Fund has advanced for any of his bills not being covered was that, since he ceased to be a Fund participant in June of 2000, "he [was] not entitled to * * * coverage of his medical bills incurred after that time." Reply Brief, at 3, quoting Defendant's Memorandum, at 1, and Hanson Affidavit, at ¶6. However, the Plaintiff argues that, even assuming that the Fund were correct, that it would not be liable for any medical bills incurred after June of 2000, such a limitation is irrelevant because all of his bills were incurred prior to that date. The last bill, which the Plaintiff claims should be paid by the Fund, is dated January 6, 2000 -- six months prior to the date on which he was no longer a Fund participant.

In addition, the Plaintiff argues that the Fund should be estopped from asserting any new reason for not paying his medical bills, since its original denial of his claim was based entirely on

its erroneous interpretation of the worker's compensation exclusion, and therefore, he was not specifically notified, in writing, of any other reason for the denial of benefits, as required by ERISA. While we find no estoppel here,[5] we agree with the Plain

---

[5]In Weber v. Saint Louis University, 6 F.3d 558, 560 (8th Cir. 1993), our Court of Appeals address the issue of estoppel, and ruled as follows:

> In Farley v. Benefit Trust Life Insurance Co., 979 F.2d 653, 660 (8th Cir. 1992), the court held that in a de novo review of a denial of benefits under an employee welfare benefit plan governed by ERISA, it is entirely proper for a trial court to consider "policy provisions [that] clearly may * * * be a basis for such a denial" even if those provisions were not "specified * * * as the basis of denial of coverage." We hold today that, in fact, a trial court must consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage, since to do otherwise would "permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it." Id.

Subsequently, in Mansker v. TMG Life Insurance Co., 54 F.3d 1322, 1328 (8th Cir. 1995), the Court held:

> In essence, TMG would have this court conclude from Bruch and Cox that, where a plan administrator or fiduciary has discretionary authority to decide issues concerning the payment of plan benefits, but fails to make a decision on such issues because coverage is being denied, the courts may not independently decide the issues even upon determination that benefits

(continued...)

tiff that he is entitled to an Order directing the Defendant to pay his medical bills, forthwith. The Plaintiff has clearly submitted no bill for payment by the Fund, which was incurred after the date that his participation in the Fund ceased, and the Fund has presented us with no support, factual or legal, for its bald assertion that "not all of [the Plaintiff's] medical claims are covered by the plan," apart from its errant contention, that the bills post-dated the Plaintiff's separation from the Fund. Again, we direct counsel to "meet and confer" on this issue forthwith, and should there be any continuing disagreement as to the amounts that are qualified for payment, under the ERISA plan, the parties are to follow the same briefing schedule that we have previously prescribed. Frankly, we are troubled that the issue of what bills qualify for payment has not already been resolved. To the extent it remains unresolved, we will promptly rule following the parties' submission of any briefing.

---

[5](...continued)

> were improperly denied. We decline to adopt that view. Rather, we hold that the consequence of TMG's failure to render a decision on certain issues concerning Mansker's medical expenses is that the district court could, as it did, decide the issues de novo.

We conclude that, in the first instance, the parties should seek to resolve any remaining dispute, but that we are empowered to dispose of any disagreements which the parties are unable to resolve.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Petition for Award of Attorneys' Fees [Docket No. 22] is GRANTED, and the Plaintiff is awarded $25,100.50 in attorneys' fees, plus its costs and disbursements.

2. That the Defendant shall pay to the Plaintiff the sum of $4,225 in disability income benefits, plus interest from the date of the Defendant's initial denial of the Plaintiff's claim for those benefits, to the date of payment.

3. That the Defendant shall pay directly to the medical providers the medical bills which are covered by the applicable ERISA plan.

4. That, as detailed in the text of this Order, any remaining disputes as to the amount of interest owed, or as to the medical bills that qualify for payment, shall be briefed to the Court, in accordance with the schedule we have provided, in order that the Court may promptly enter a final Judgment in this matter.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE